FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2008 MAR -4  PM 1:43

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

JIMMY DERAND HATTEN,

    Plaintiff,

vs.            Case No.   2:05-cv-6-FtM-34DNF

BILLY O'DRAIN, M.D.,

    Defendant.
_____

**OPINION AND ORDER**[1]

I.

This matter comes before the Court upon review of Defendant O'Drain's Motion for Summary Judgment (Doc. #67, Def's Mot. S.J.), filed January 18, 2007. Defendant attaches the following exhibits in support of her motion: (1) the Affidavit of Dr. Todd. R. Wilcox (Doc. #68-2, Aff. of Dr. Wilcox), a medical doctor licenced in Utah who serves as the Medical Director of jails located in Salt Lake City, Utah and Maricopa County, Arizona; (2) the transcript of Plaintiff's deposition (Doc. #69-2, Pl. Depo.); (3) the Affidavit of Michael Johnson (Doc. #70-2, Aff. Johnson), the Health Services Administrator of the Lee County Jail; and (4) Plaintiff's medical

---

[1]This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

records from the Lee County Jail (Docs. #70-2 - #75-2, Pl's Medical Records). Plaintiff filed Responses (Doc. #79, Doc. #81, Doc. #92, Pl. Response) in opposition to the Defendant's motion.

II.

Plaintiff, who is proceeding *pro se*, filed a Civil Rights Complaint Form pursuant to 42 U.S.C. § 1983 while a pre-trial detainee at the Lee County Jail on January 3, 2005.[2] See Civil Rights Complaint Form (Doc. #1, Complaint). The Court previously dismissed Plaintiff's claims against a number of the Defendants. See Orders at Doc. #51, Doc. #53. Doc. #58. Defendant O'Drain, whom Plaintiff identified as the "chief administrator of Prison Health Services," remains as the sole Defendant. See generally Complaint at 7.

At the summary judgment stage of proceedings, the Court construes all of the facts in the light most favorable to the non-moving party, which in this case is Plaintiff. Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). The record reveals the following undisputed facts: Plaintiff was booked into the Lee County Jail on March 30, 2004. Complaint at 9.[3] At the time of booking, Plaintiff informed

---

[2]According to the address listed on the docket, Plaintiff is no longer incarcerated.

[3]For citation purposes, the page numbers referenced herein are
(continued...)

the jail's medical staff that he had human immunodeficiency virus ("HIV") and that he required HIV medications. Id., Pl's Med. Records at Doc. #70-2, pp. 4, 7. Additionally, Plaintiff provided the medical staff the contact information for his treating physicians and signed a release form authorizing PHS to retrieve his medical records from his prior treating physician. Complaint at 9; Medical Release Forms at Doc. #72-2, pp. 17-19. Plaintiff states that he was "placed immediately on the medical floor." Complaint at 9. Nevertheless, Plaintiff experienced difficulties receiving his HIV medications. See generally Id. Plaintiff states that two individuals outside of the jail, Corrine Hatten and Jimmy Miles,[4] contacted Prison Health Services on his behalf to inform medical officials that he was not receiving his HIV medicine. Id. at 9; Pl's Exh. at Doc. #46-2, p. 24.

The parties agree that Plaintiff did not immediately receive his HIV medication. However, the parties disagree about the length of time Plaintiff went without his HIV medications, and whether Plaintiff eventually received all of his HIV medications. See generally Complaint at 9; Def's Mot. S.J. at 2, 10; Pl's Exh. at

---

[3](...continued)
those that appear scanned at the top of the page on the Court's CM/ECF system.

[4]The Complaint identifies the person who called PHS on Plaintiff's behalf as "Jimmy Lee". The Inmate Medical Request Form identifies the person as "Jimmy Miles". Plaintiff's deposition clarifies that it was Jimmy Miles, a friend of the Plaintiff, who called Prison Health Services. Pl. Depo. at 21.

Doc. #46-2, p. 4, 8, 22, 24. Plaintiff contends that he went without his HIV medication for "over two weeks." Complaint at 9; Pl's Response at Doc. #92, p. 1. However, elsewhere Plaintiff indicates that he did not receive his HIV medications for at least twenty-eight days. Pl's Exh. at Doc. #46-2, p. 4, 8, 22, 24; Pl's Response at Doc. #92, p.2. Defendant acknowledges that Plaintiff went without his medication from March 30, 2004, until April 27, 2004, or for approximately three weeks.[5] Def's Mot. S.J. at 4, 10; Pl Depo. at 22. Defendant explains that the delay was attributable to the amount of time required to acquire Plaintiff's medical records from his prior treating physician. Def's Mot. S.J. at 4, 10; Aff. of Wilcox at 1-2 (stating "the in house physicians were waiting for outside records before ordering HIV medications."). Plaintiff further contends that even when he eventually received the medication, he still did not receive all of his prescribed HIV medications. Complaint at 10; Pl's Exh. at Doc. #46-2, pp. 1. Defendant, however, states that once Plaintiff began receiving his medicine in April 2004, he continued receiving the medications throughout his detention. Def's Mot. S.J. at 4.

Additionally, Plaintiff complains that although he received a "sick call date" and was scheduled to see a doctor on May 5, 2004,

---

[5]Counsel for Defendant, however, does not provide a reference to what evidence in the record supports his assertion.

and again on May 10, 2004; he did not see a doctor on either date.[6] Complaint at 9. Defendant does not dispute that Plaintiff did not see a doctor on these dates, but states that Plaintiff refused a sick call on March 31. Def's Mot. S.J. at 4.

As a result of not receiving his HIV medication, Plaintiff alleges that he "broke out with facial swelling, fever [,] bleeding, and infection." Complaint at 9. Accordingly, Plaintiff requests monetary damages and injunctive relief.[7] See Pl's Unopposed Mot. to Amend Complaint at Doc. #91; Complaint at 10.

### III.

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P[.] 56©); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986).

In re Optical Technologies, Inc., 246 F.3d 1332, 1334 (11th Cir. 2001). "A factual dispute alone is not sufficient to defeat a

---

[6]Plaintiff did see an unidentified medical staff person on May 11, 2004, and was prescribed an antibiotic and pain medication. Complaint at 9.

[7]As Plaintiff is no longer in custody, Plaintiff's request for injunctive relief is due to be denied as moot.

properly pled motion for summary judgment." <u>Teblum v. Eckerd Corp. of Fla., Inc.</u>, Slip Copy, 2006 WL 288932 *1 (M.D. Fla. 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." <u>Lofton v. Secretary of Dept. of Children and Family Services</u>, 358 F.3d 804, 809 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex</u>, 477 U.S. at 323). "When a moving party has discharged its burden, the non-moving party must 'then go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d at 970 (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" <u>Id.</u> (citations omitted). Additionally, "[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

IV.

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Here, the Complaint alleges violations of Plaintiff's constitutional rights based upon Defendant O'Drain's alleged deliberate indifference to Plaintiff's serious medical condition during his incarceration at the Lee County Jail. See generally Complaint.

"[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429

U.S. 97, 104 (1976)); <u>Campbell v. Sikes</u>, 169 F.3d 1353 (11th Cir. 1999). Although, Plaintiff's rights as a pre-trial detainee are governed by the Fourteenth Amendment rather than the Eighth Amendment, the applicable standard is the same. <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996). Thus, the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is equally applicable to claims arising under the Fourteenth Amendment. <u>Cottone v. Jenne</u>, 326 F.3d at 1352, 1357 n.4 (11th Cir. 2003)(citing <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 (1977)).

In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. <u>Farrow</u>, 320 F.3d at 1243 (citing <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11th Cir. 2000)). A plaintiff must first show that he had an "objectively serious medical need." <u>Id.</u> A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id.</u> Second, a plaintiff must establish that a defendant acted with "deliberate

-8-

indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

When a prison official eventually provides medical care, the prison official's act of delaying the medical care for a serious medical need may constitute an act of deliberate indifference. See

McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). In determining whether the length of the delay violates the constitution, relevant factors for the Court to consider include the nature of the medical need and the reason for the delay. McElligott, 182 F.3d at 1255. The Court should consider whether the delay in providing treatment worsened the plaintiff's medical condition, and as such "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds Hope v. Pelzar, 536 U.S. 730 (2002).

V.

Defendant O'Drain argues that the record does not support a claim of deliberate indifference; thus, she seeks entry of judgment as a matter of law. Def's Mot. S.J. at 7. In particular, Defendant asserts that the record is devoid of: "evidence constituting [sic] serious injury," "evidence of a serious medical need," "evidence that Ms. O'Drain personally failed or refused to render treatment" to Plaintiff, and "a causal connection between Ms. O'Drain's actions and Hatten's allegations." Id. at 9-11.

First, Defendant O'Drain contends that the record does not evidence a serious medical need. Def's Mot. S.J. at 9. In support, Defendant refers this Court to case law from the United States Court of Appeals for the Second Circuit, Smith v. Carpenter, 316 F.3d 178, 188-189 (2d Cir. 2003), and notes that the Second Circuit, when deciding a case involving a plaintiff who did not receive his HIV medication, focused on the medical problems attributable to the delay in providing medical treatment, rather than the plaintiff's underlying medical condition. Id. at 10. Defendant suggests that this Court should follow the reasoning of the Second Circuit and similarly find that the record does not support a showing that Plaintiff suffered any serious medical problems as a result of the delay in HIV medication. Id. at 10-11.

While case law from the Second Circuit is persuasive authority, it is not binding. Moreover, the Eleventh Circuit Court of Appeals, in a factually similar case, looked at the underlying medical condition and determined that HIV does constitute a serious medical condition.[8] Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). In Brown, the court reversed the district court's denial of a plaintiff's request to amend his Complaint when the plaintiff alleged that a jail doctor stopped prescribing medication

---

[8]Notably, counsel for Defendant was made aware of the Eleventh Circuit's ruling in the this Court's prior Order denying in part and granting in part the Defendants' Motion to Dismiss. See generally Order at Doc. #53, p. 13.

for plaintiff's HIV and hepatitis. Id. at 1351-1352. The court found that both HIV and hepatitis are conditions that mandate treatment; or, are of the type that a lay person would easily recognize necessitate a doctor's attention. Id. at 1351. Significantly, the court stated that HIV is a condition that "'if left unattended pos[es] a substantial risk of serious harm.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). Indeed, in its decision, the court noted that "[t]he defendants wisely d[id] not deny that [Plaintiff] has serious medical needs." Id. Based upon the foregoing, this Court declines to conclude that Plaintiff's HIV does not constitute a serious medical condition as a matter of law. To the extent Defendant frames Plaintiff's medical condition as merely "facial swelling," the Defendant loses focus on the alleged cause of the facial swelling: the cessation of Plaintiff's HIV medication. Compare Def's Mot. S.J. at 8; with Complaint at 9.

Next, Defendant O'Drain argues that Plaintiff's theory of liability is premised upon *respondeat superior* because she held the position of a supervisor and was not personally involved in the delay of Plaintiff's medication. Def's Mot. S.J. at 11. Defendant further argues that the record is devoid of any evidence of a casual connection between her actions and Plaintiff's alleged constitutional deprivation. Id.

The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Monell v. Dept. of Social Serv., 436 U.S. 658, 690-692 (1978). However, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Absent personal participation by Defendant O'Drain, Plaintiff must show an affirmative causal connection between her acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them

establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).

The record before the Court demonstrates that Plaintiff presented grievances and medical request forms to Defendant O'Drain indicating that Plaintiff's physical condition was deteriorating due to the denial of his HIV medication, and further that Defendant O'Drain was one of the individuals from the medical department who wrote responses to Plaintiff's grievances and medical requests. See Pl's Exh. at Doc. #46-2, pp. 1-3, 8, 9, 20. Additionally, the forms that Plaintiff submitted to other individuals at the jail were forwarded to Defendant O'Drain for her review and apparent handling. Complaint at 4. Thus, to the extent Defendant O'Drain contends that it was "other people who were responsible for treating inmates," the record demonstrates that Defendant O'Drain was aware that Plaintiff was not being given his HIV medication and was arguably in a position, as the supervisor, to ensure that Plaintiff received his necessary medication, and failed or refused to act. Pl's Exh. at Doc. #46-2, pp. 1-3, 8, 9, 20. Thus, there are facts in the record from which a jury could reasonably conclude that Defendant O'Drain personally participated in the alleged constitutional deprivation. Alternatively, a jury could conclude that O'Drain was causally connected to the alleged constitutional deprivation because she knew that "the other people" responsible for treating Plaintiff failed to provide him with the necessary

treatment, and she failed to intervene. A reasonable jury could find based upon the facts in this case that the denial of Plaintiff's HIV medications during the time in which Defendant O'Drain was on notice that Plaintiff was not receiving the medicine amounts to deliberate indifference.

In support of her request for summary judgment, Defendant O'Drain also argues that the delay in providing Plaintiff with his HIV medication occurred because the jail was awaiting receipt of Plaintiff's medical records from the physicians who treated him prior to his incarceration. Def's Mot. S.J. at 4. Defendant relies on the Affidavit of Dr. Wilcox who opined that based on Plaintiff's "complex infectious disease," waiting on the records from Plaintiff's prior treating physician was appropriate. Id. at 9. Thus, Defendant asserts that the delay did not amount to deliberate indifference because the delay was reasonable based on the facts presented in the record. Id.

Plaintiff states that upon his arrival at the jail, he immediately made the medical department aware of his medical condition and need for HIV medication. Pl's Response at Doc. #92, p. 2-3. Further, the record demonstrates that Plaintiff was previously incarcerated at the Lee County Jail and had HIV at that time. Pl. Depo. at 4-5, 7. Moreover, Plaintiff points out that the jail received his medical records in early April 2004, but he still did not receive his HIV medications for another twenty-eight

days. Pl's Response at Doc. #93, p. 2-3. According to the PHS records, Plaintiff's prior treating physician forwarded Plaintiff's health records to the jail on April 12, 2004. See Doc. #72-2 at 1. Defendant admits, however, that Plaintiff did not start receiving his HIV medications until April 27, 2004; thus, while part of the delay may be attributable to waiting for the medical records, Defendant has not explained the remaining two week delay from April 12 to April 27. A jury could find, under these circumstances, that the delay in providing the HIV medication was not reasonable and therefore amounted to deliberate indifference. See Dekalb Regional Youth Detention Center, 40 F.3d at 1188-1189 (noting that the delay in medical treatment "must be interpreted in the context of the seriousness of the medical need.").

Defendant also argues that summary judgment is proper because Plaintiff's deposition testimony establishes that Plaintiff did not suffer any adverse effects from the delay in receiving his HIV medication. Def's Mot. S.J. at 9; Pl. Depo. at 15: 2-5. During Plaintiff's deposition, Defendant's counsel asked Plaintiff whether any doctor had told Plaintiff that he faces any long-term health consequences as a result of the delay in HIV medication. Pl. Depo. at 15:2-5. Plaintiff vaguely answered, "No, they don't know nothing about it, sir." Id. at 15:5. Plaintiff disputes Defendant's interpretation of this statement and points to the fact that he experienced facial swelling and skin problems, which are

the health problems that Defendant admits Plaintiff received treatment. See Complaint at 9; Pl's Response at Doc. #92, pp. 3, 5; Def's Mot. S.J. at 4

In consideration of the record as a whole, the Court is not persuaded that Plaintiff's answer to this question warrants entry of summary judgment in favor of Defendant. Plaintiff's response to the Defense counsel's question during the deposition is vague. Moreover, shortly before Plaintiff responded to this question, Plaintiff stated he did not know the status of his AIDS condition and in fact stated that he "just had a problem with [his] liver." Pl. Depo. at 14:11-25. Additionally, the Court notes that the PHS records provide evidence that Plaintiff required treatment for facial swelling and skin problems which Plaintiff attributes to the delay in his receipt of the HIV medications. See Doc. #71-2 at 15, 18. Thus, the Court finds that genuine issues of material fact remain.

Last, Plaintiff complains that once he began receiving his HIV medications, he did not receive *all* of the medications, but does not specify which medication he failed to receive. Complaint at 10; Pl's Exh. at Doc. #46-2, pp. 1. In the memorandum of law in support of the Motion for Summary Judgment, Defendant argues that once Plaintiff began receiving his medicine, he continued receiving the medications throughout his detention. Def's Mot. S.J. at 4. However, Defendant does not refer the Court to any affidavit or

other evidence of record to support this assertion.[9] The PHS medical records identify Plaintiff's medications and contain initials when the medications were given to Plaintiff. See Doc. #71-2 at 15, 18. Upon review of these records, it appears that initials are absent on certain dates for certain medications. Without further information a jury could conclude that even when Plaintiff was provided his HIV medications, he was not provided with all of the HIV medicines and that such failure amounted to deliberate indifference. Thus, the Court finds that the record as presently developed presents questions of material fact.

The Court notes that Defendant also seeks judgment on Plaintiff's state law tort claim on the basis of Plaintiff's failure to provide the pre-suit notice required before pursuing a claim of medical negligence under Florida law. Def's Mot. S.J. at 12. Upon review of the Complaint, the Court does not find that Plaintiff is pleading a state law tort action. In fact, Plaintiff reiterates in his Response that he "is not claiming a state negligence claim [,] but a[n] Eighth Amendment violation." See Pl's Response at Doc. #92, p. 1. Thus, the Court need not address whether Plaintiff satisfied the statutory prerequisites to pursuing a medical negligence action in Florida.

ACCORDINGLY, it is hereby

---

[9]The affidavit of Dr. Wilcox does not address this issue. See generally Aff. of Dr. Wilcox.

**ORDERED:**

Defendant O'Drain's Motion for Summary Judgment (Doc. #67) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida, on this 4th day of March, 2008.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record